J-S61037-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :           PENNSYLVANIA
                                    :
             v.                        :
                                    :
                                    :
DONNELL S. WILLIAMS : 
                                    :
           Appellant           :    No. 1489 EDA 2019

Appeal from the Judgment of Sentence February 19, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0001072-2018

BEFORE:   BOWES, J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED DECEMBER 11, 2019**

Appellant, Donnell S. Williams, appeals from the judgment of sentence entered in the Court of Common Pleas of Delaware County following his conviction by a jury on the sole charge of persons not to possess a firearm, 18 Pa.C.S.A. § 6105. After a careful review, we affirm.

Following his arrest in connection with the possession of a firearm, Appellant proceeded to a jury trial on January 9, 2019,[1] at which the Commonwealth presented the testimony of Police Officer Marc Barag,

---

[*] Former Justice specially assigned to the Superior Court.

[1] A jury trial in this matter originally commenced on October 29, 2018; however, after deliberations, the jury was deadlocked, so the trial court declared a hung jury.

Sergeant David McDonald, and Detective Louis Grandizio.[2]  In its opinion, the trial court accurately set forth in detail the testimony offered by the witnesses, as well as the stipulations entered into by the parties.  Trial Court Opinion, filed 6/20/19, at 2-8.  We rely on the trial court's detailed factual recitation for purposes of this appeal.

At the conclusion of trial, the jury convicted Appellant of the offense indicated *supra*, and on February 19, 2019, the trial court sentenced Appellant to 60 months to 120 months in prison for the sole offense.  On February 28, 2019, Appellant filed a timely, counseled post-sentence motion, which the trial court denied on May 3, 2019.  This timely, counseled appeal followed on May 22, 2019, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant sets forth the following issues in his "Statement of Questions Involved":

1. Was the verdict of the Jury was [*sic*] against both the weight and sufficiency of the evidence and is [Appellant] entitled to an arrest of judgment or new trial[?]

2. Did the trial court abuse its discretion in failing to pronounce a mistrial where a Juror (Juror #5) appeared to be sleeping during the trial court's charging of the jury[?]

Appellant's Brief at 4 (suggested answers omitted).

---

[2] Appellant did not testify on his own behalf or offer the testimony of any witnesses.

In his first issue, Appellant challenges both the sufficiency and weight of the evidence.[3] We begin with Appellant's challenge to the sufficiency of the evidence. A claim impugning the sufficiency of the evidence presents us with a question of law. ***Commonwealth v. Widmer***, 560 Pa. 308, 744 A.2d 745, 751 (2000). Our standard of review is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brooks***, 7 A.3d 852, 856-57 (Pa.Super. 2010) (citations omitted). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence

---

[3] We note that claims related to the sufficiency of the evidence are distinct from claims related to the weight of the evidence. ***Commonwealth v. Smith***, 853 A.2d 1020 (Pa.Super. 2004). At various points, Appellant improperly conflates the two claims; however, to the extent he has properly developed separate arguments for each claim, we shall address them.

links the accused to the crime beyond a reasonable doubt." ***Commonwealth v. Sanders***, 627 A.2d 183, 185 (Pa.Super. 1993). "Although a conviction must be based on 'more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty.'" ***Commonwealth v. Gainer***, 7 A.3d 291, 292 (Pa.Super. 2010) (quotation omitted).

Appellant was convicted of persons not to possess a firearm under 18 Pa.C.S.A. § 6105, which relevantly provides the following:

> **§ 6105. Persons not to possess, use, manufacture, control, sell or transfer firearms**
>
> **(a) Offense defined.**—
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
>
> ***
>
> **(c) Other persons.--**In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
>
> ***
>
> (2) A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

18 Pa.C.S.A. § 6105.

In the case *sub judice*, Appellant does not dispute that he is prohibited from possessing a firearm; however, he contends the Commonwealth failed

- 4 -

to prove that he actually possessed a firearm. We agree with Appellant that possession is an element of the firearms offense, and the firearm was not discovered on Appellant's person so as to establish actual possession. *See Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132, 134 (1983) (holding that actual possession is shown by proving the contraband was found on the defendant's person).

However, to the extent Appellant suggests the Commonwealth was required to prove that Appellant actually possessed the firearm, we disagree. Rather, to establish the element of possession, this Court has held that "[p]ossession can be found by proving actual possession, constructive possession, or joint constructive possession." *Commonwealth v. Parrish*, 191 A.3d 31, 36 (Pa.Super. 2018) (citation omitted).

We have previously determined:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

**Parrish**, 191 A.3d at 36–37 (internal citations and quotations omitted).

To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant. Our Supreme Court has recognized that "constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." **Commonwealth v. Johnson**, 611 Pa. 381, 26 A.3d 1078, 1094 (2011) (citation omitted).

Here, viewing the evidence in the light most favorable to the Commonwealth, as the verdict winner, we agree with the trial court that the evidence sufficiently establishes Appellant's constructive possession of the firearm, which was seized by Officer Barag. As the trial court relevantly indicated:

> Officer Barag, who has spent eleven years patrolling the streets of Chester, five of which focused on narcotics and drug-related violence, [testified he] is driving down the street when he notices a large group of people. As soon as the individuals see the car[, which] they know to be an [undercover] police vehicle, they immediately look down the street and scream "cops," not just in [a] general location, but directed towards a very specific location. Officer Barag's attention immediately turns to the area where the group is focusing their message, and…he see[s] [Appellant] emerging from an abandoned house[.] Officer Barag begins to investigate the situation. Appellant tells him he was just over [by the side of the house] taking a piss yet Officer Barag can find no signs of urination. But, he does find a firearm stashed in a pile of leaves right where Appellant, by his own admission, tells Officer Barag that he took a piss[.] [The] firearm…is still warm to the touch despite it being December. In addition, Appellant's demeanor begins to change from casual to nervous with each step Officer Barag…took that got him closer to the stashed firearm. Once it was located, Appellant immediately said to Officer Barag, "you know we be stashin' guns out here in case the opps roll

through" and finally, when Appellant is ultimately arrested, read his **Miranda** rights, and is being processed, he admits his own defeat, "you got me, Barag, you got me." The evidence unequivocally supports [the conclusion] that Appellant had both the power and intent to control the firearm. Appellant's own words and actions during the encounter show that he stashed the firearm in the pile of leaves as a result of the group yelling "cops." Therefore, Appellant's claim is without merit.

Trial Court Opinion, filed 6/20/19, at 12-13.

We agree with the trial court that, when viewed in its totality, the circumstantial evidence reveals that Appellant had the power and intent to control the firearm. **See Johnson**, **supra**. Simply put, contrary to Appellant's assertion, the Commonwealth was not required to demonstrate that he actually possessed the firearm in order to establish Appellant's possession thereof.

Further, contrary to Appellant's suggestion, the Commonwealth was permitted to establish Appellant's constructive possession via circumstantial evidence and the reasonable inferences that arise therefrom. **Parrish**, **supra**. Accordingly, we conclude Appellant is not entitled to relief on his challenge to the sufficiency of the evidence.

With regard to his weight of the evidence claim, Appellant avers that, in finding Appellant possessed the firearm, the jury erred in giving any weight to

the officer's testimony that the firearm was still warm on a cold December day.[4]  *See* Appellant's Brief at 21.

When considering challenges to the weight of the evidence, we apply the following precepts.  "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses."  *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa.Super. 2015) (quotation marks and quotation omitted).  Resolving contradictory testimony and questions of credibility are matters for the finder of fact.  *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact.  *Talbert*, *supra*.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence.  *See id.*

> Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence.  One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

---

[4] Appellant adequately preserved his weight claim in his post-sentence motion. *See* Pa.R.Crim.P. 607(a).

*Id.* at 546 (quotation omitted). Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (quotation marks and quotation omitted).

Here, in rejecting Appellant's weight of the evidence claim, the trial court relevantly indicated:

> The jury was free to believe all, part, or none of the evidence and to assess the credibility of the witnesses. The jury determined that the witnesses were credible and that the evidence provided supported a verdict of guilty. The verdict in this case does not even come close to the standard of being so contrary to the evidence as to shock one's sense of justice.

Trial Court Opinion, filed 6/20/19, at 14.

We conclude the trial court did not abuse its discretion in denying Appellant's challenge to the weight of the evidence. *Talbert*, *supra*. We note the jury was free to determine the weight and inferences to be drawn from Officer Barag's testimony that the firearm he seized from the leaves felt warm even though it was a cold December day. To the extent Appellant requests that we re-weigh the evidence and assess the credibility of the witnesses presented at trial, we decline to do so as it is a task that is beyond our scope of review. *See Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa.Super. 2013)(stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact").

In his final claim, Appellant contends the trial court abused its discretion in failing to pronounce a mistrial where Juror #5 appeared to be sleeping during the trial court's charging of the jury.

Before addressing the merits of Appellant's claim, we must first consider whether it is properly before us. Pennsylvania Rule of Appellate Procedure 302 provides that issues that are not first raised in the trial court are waived on appeal. Pa.R.A.P. 302(a). It is well-settled that the trial court must be given an opportunity to correct errors at the time they are made. *See Commonwealth v. Marlin*, 452 Pa. 380, 305 A.2d 14 (1973). "[A] party may not remain silent and afterwards complain of matters which, if erroneous, the court would have corrected." *Marlin*, *supra*, 305 A.2d at 16 (citations omitted). "Even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver." *Commonwealth v. Strunk*, 953 A.2d 577, 579 (Pa.Super. 2008) (citations omitted).

In the case *sub judice*, at trial, immediately after the trial court gave its instructions to the jury, the following relevant exchange occurred:

[Sidebar Discussion:]

**THE COURT:** Anything additional from the Commonwealth?

**[ADA]:** Judge, I have a concern to raise. During the individual—during the instruction, it appeared Juror #5 fell asleep, and when you passed out the information it appeared Juror #4[,] when he passed [it] to [Juror #5,] actually woke her up to give her the sheet. And I'm not—couldn't tell you what point she may have fallen asleep, but I have a concern and I think his reaction to me indicated that he saw that.

> **THE COURT:** Well, this is what I'll do. I noticed that myself. When I—I'm going to send them back, but I'm going to bring Juror #5 back into the room to ask if she's heard the instructions—
>
> **[ADA]:** Okay.
>
> **THE COURT:** --if she's able to deliberate. I'm going to keep Jurors 13 and 14 in here while we do that.
>
> **[ADA]:** Okay. Thank you, Judge.
>
> **DEFENSE COUNSEL]:** Okay.
>
> **THE COURT:** Okay. Anything else for the Commonwealth?
>
> **[DEFENSE COUNSEL]:** Yeah. I have no further. That was something that I noticed.
>
> **[ADA]:** That was my only—yeah, other—
>
> **THE COURT:** I noticed that.
>
> **[ADA]:** --than that, I believe the instruction was—
>
> **[DEFENSE COUNSEL]:** Yeah, I—
>
> **THE COURT:** Okay.
>
> **[DEFENSE COUNSEL]:** I have no problem with the instruction.
>
> **THE COURT:** Okay.
>
> [End of sidebar discussion]

N.T., 1/10/19, at 142-44.

At this point, the trial court instructed the jury that it would be choosing a foreperson, provided the procedure for the jury to ask a question, and requested the jurors respect each other during deliberations. *Id.* at 144-46. The following relevant exchange then occurred:

> **[ADA]:** Judge, can we see you at sidebar just briefly?
>
> **THE COURT:** Sure.
>
> [Sidebar Discussion:]
>
> **[ADA]:** I just have a concern. If we're going to inquire that when you ask them not to begin deliberations until we—because I don't want them to start with 11 people.

- 11 -

**[DEFENSE COUNSEL]:** Right.

**THE COURT:** I'll tell them that, yeah.

**[ADA]:** Okay, thank you.

**THE COURT:** And we'll do it in the robing room on—

**[ADA]:** So that we can—we can replace if we have to.

**THE COURT:** No, in fact—yeah, let's do it in the robing room.

**[ADA]:** Okay.

**THE COURT:** Okay.

**[ADA]:** Thanks.

[End of sidebar discussion]

**THE COURT:** Okay, ladies and gentlemen, we're going to send you back to the jury room. You're not going to be ready to start your deliberations yet because I have to get the written charge ready to give you those points that I told you. So, we're going to take you back, get yourselves set up. It'll take just a few seconds.

**COURT STAFF:** Could 13 and 14 please stay here.

**THE COURT:** Jurors 13 and 14, I'll be with you in just a minute. I would like to see Counsel in the robing room and Theresa, I want to move the record to the robing room, please.

[Robing Room Discussion:]

**COURT STAFF:** Just have a seat.

**THE COURT:** Just have a seat here.

**JUROR 5:** I [INAUDIBLE] over there [INAUDIBLE].

**THE COURT:** No, that's okay. I have one question. It appeared when we were passing out the verdict sheet that you were sleeping and not paying attention. Did you hear all [of] the Court's instructions?

**JUROR 5:** Yes.

**THE COURT:** Any follow up, Counsel?

**[ADA]:** So you at no point missed anything? You understood everything? You're good?

**JUROR 5:** Um-hum.

**THE COURT:** Okay. We're going to take you back to the jury room.

- 12 -

**JUROR 5:** My apologies.

**THE COURT:** That's okay. John. Okay. I want to bring 13 and 14 back in a minute.

**[ADA]:** Okay.

**THE COURT:** And let me get this stuff out to them to deliberate.

**[ADA]:** Okay. So, we'll just have John tell them they can begin deliberations when he—

**THE COURT:** Yeah.

**[ADA]:** --hands them the paperwork?

**THE COURT:** Yeah, when he hands the paperwork.

**[ADA]:** Okay.

**[DEFENSE COUNSEL]:** Okay.

**[ADA]:** And you don't need us back here for 13 and 14?

**THE COURT:** No, no.

**[ADA]:** Okay. So I'll tell Theresa we can go off.

[End of Robing Room discussion]

*Id.* at 146-49.

Our review of the record confirms that, after the Commonwealth brought to the trial court's attention that Juror #5 may have been sleeping during the trial court's jury instructions, defense counsel concurred that she had noticed the same conduct. The trial court indicated it would question Juror #5, and defense counsel indicated she had nothing further to add.

After the trial court questioned Juror #5 in the robing room, defense counsel did not pursue the matter further. More specifically, defense counsel did not request a mistrial or seek any other remedy; but rather, defense counsel opted to allow Juror #5 to participate in the determination of the verdict. Appellant cannot now complain that the trial court should have

- 13 -

declared a mistrial on this basis. **See Strunk**, **supra** (holding the appellant waived for appellate review the claim of whether he was denied his right to a fair trial where a juror fell asleep during the court's charge but defense counsel opted to allow the juror to participate in the determination of the verdict).

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/19

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | CP-23-CR-1072-2018 |
| v. | |
| **Donnell Williams** | |

A. Sheldon Kovach, Esquire, for the Commonwealth
Daniel A. Pallen, Esquire, for the Appellant

### O P I N I O N

Capuzzi, J.                                                                      Filed: 6 20 19

This is an appeal from Appellant's judgment of sentence entered on February 19, 2019. On appeal, Appellant raises the following issues: (1) the verdict of the jury was not supported by sufficient evidence and was against the weight of the evidence; (2) the trial court abused its discretion in failing to pronounce a mistrial where Juror #5 appeared to be sleeping during the trial court's charging of the jury; (3) reversible error occurred, and a mistrial should have been pronounced, where the Commonwealth witness (Detective Grandizio) made a statement referring to the previous trial of the defendant which resulted in a hung jury; (4) reversible error occurred insofar as one of the jurors had previous contacts with the defendant and failed to disclose them during *voir dire* (this information was not known until after the verdict was rendered and stated to defense counsel by the defendant otherwise it would have been addressed during jury selection and prior to trial); and (5) the trial court abused its discretion in failing to pronounce a mistrial where the ADA made impermissible remarks during closing argument requiring the Court to issue cautionary instructions to the jury. For the forthcoming reasons, Appellant's allegations are without merit and his judgment of sentence should be affirmed.

1

## FACTUAL BASIS

Officer Marc Barag (hereinafter Officer Barag) is employed by the City of Chester Police Department and has been so employed since July of 2008. [N.T., 1/10/2019 p. 6]. In 2013, Officer Barag joined the Narcotics Unit, where his tasks include investigating drug sales, conducting surveillance and wiretap investigations, as well as executing search warrants. [N.T., 1/10/2018 p. 93]. Officer Barag has attended numerous schools and trainings, including the Pennsylvania Narcotics Officers Association where he learned about drug trends, drug seizures, and different gang related activities. In addition, Officer Barag has attended numerous seminars hosted by various agencies regarding the use of confidential informants, drug trafficking and drug related gang activity. [N.T., 1/10/2019 p. 12].

On December 22, 2017, at approximately 3:00p.m., Officer Barag was working in his capacity as a narcotics officer, dressed in jeans and a sweatshirt with his ballistics vest overtop of his sweatshirt. The vest reads "police" in white lettering. [N.T., 1/10/2019 p.13]. Officer Barag was driving an unmarked black Tahoe equipped with lights and sirens; he was working solo. [N.T., 1/10/2019 p. 13]. Although his vehicle is technically an undercover vehicle, it has become known as a police vehicle to the residents of Chester. [N.T., 1/10/2019 p.13].

Based upon information received, Officer Barag proceeded to travel to the area of Terrill Street and Brown Street, which is located in the Sun Village section of Chester. [N.T., 1/10/2019 p. 13]. Officer Barag made a right-hand turn onto Terrill Street, which runs north-south, and then proceeded to make a right-hand turn onto Brown Street. Officer Barag's first observation after turning right onto Brown Street was a large group of individuals, approximately ten to fifteen people, standing on the street to his right-hand side, approximately halfway down the block. [N.T. 1/10/2019]. The group immediately noticed the undercover vehicle, began looking down the street,

2

and then one of the individuals shouted "cops." [N.T., 1/10/2019 p.15]. After that, Officer Barag's attention was directed down the street to the area where the group was all staring. Officer Barag did not stop to speak with the group; rather, his focus was on the area in which the group was focusing their attention. [N.T.,1/10/2019 p. 15]. Based upon his extensive training and time with the police force in Chester, he suspected that the large group of individuals were probably acting as lookouts. [N.T.,1/10/2019 p. 15].

Officer Barag continued to drive down Brown Street, past the group, at which time he observed, on his left-hand side, a male subject emerging from the side of an abandoned property, precisely in the location where the group had been staring while shouting "cops" after seeing Officer Barag's vehicle. [N.T., 1/10/2019 p. 15]. Officer Barag observed the individual, later identified as Appellant, walk away from the side of the abandoned property and proceed up towards the sidewalk. Officer Barag stopped his car in the street and began to exit his vehicle. [N.T., 1/10/2019 p. 16]. As he was exiting his vehicle, Officer Barag and the individual made eye contact and Appellant immediately grabbed the pocket of his hoodie and put his hands inside. [N.T., 1/10/2019 p. 17]. Once outside of his vehicle, Officer Barag told Appellant to stop; Appellant complied. [N.T., 1/9/2019 p. 17]. Officer Barag conducted a pat-down for officer safety, which did not yield any weapons. [N.T., 1/10/2019 p. 18]. Officer Barag asked Appellant what he was doing on the side of the house to which Appellant replied, "talking a piss, Berag (sp)." [N.T., 1/10/2019 p.18].[1]

Before conducting any further investigation, Officer Barag waited for assistance to arrive. In approximately thirty seconds or so, two uniformed officers, Officer Juisti and Officer Gorman, arrived on location. [N.T., 1/10/2019 p. 18]. Once on scene, the uniformed officers remained with

---

[1] At trial, Officer Barag testified that Appellant knew who he was, and that Appellant pronounces his name "Berag" although the correct pronunciation is "Barag," [N.T., 1/10/2019 p. 18].

Appellant by the sidewalk and Officer Barag began to walk towards the side of the abandoned house where Appellant just recently emerged from. [N.T., 1/10/2019 p. 18]. At this point, the larger group of individuals who yelled "cops" were still watching from the sidewalk area. [N.T., 1/10/2019 p. 19].

Officer Barag walked over to the general area where Appellant had emerged from. As a strategy, Officer Barag tried to "play dumb" at first and did not go immediately to the location where he thought Appellant had been standing; rather, Officer Barag wanted Appellant to get conformable and not be spooked. [N.T., 1/10/2019 p. 19]. As Officer Barag began approaching the side of the abandoned residence, Appellant's body language began to change, and Appellant started repeating, "let me go, let me go man." [N.T., 1/10/2019 p. 19]. Officer Barag asked Appellant, "where did you say you were taking a piss?" [N.T., 1/10/2019 p. 19]. Appellant replied, "right where you're standing." [N.T., 1/10/2019 p. 20]. Officer Barag looked down at ground directly underneath where he was standing and observed a loose pile of leaves and clearly observed the handle of a black firearm protruding out of the pile. [N.T., 1/10/2019 p. 20]. Officer Barag put on gloves and recovered a .45 caliber Rock Island handgun form the pile of leaves. [N.T., 1/10/2019 p.20]. As he was securing the firearm, Officer Barag noticed that the weapon was still somewhat warm in comparison to the December day, evidencing that it had not been sitting outside very long. [N.T., 1/10/2019 p. 20]. There were eight rounds inside of the firearm. [N.T., 1/10/2019 p. 20].

Officer Barag looked around the area for any indicia of urination but nothing corroborated Appellant's story; the ground was completely dry. [N.T., 1/10/2019 p. 20]. Appellant was placed under arrest and read his *Miranda* rights. [N.T., 1/10/2019 p. 20]. After he was read his rights, Appellant continued to speak to Officer Barag saying, "come on Barag, you know we be stashin

4

guns out here." [N.T., 1/10/2019 p. 22]. Officer Barag took the word "we" to mean that Appellant was also including himself in that statement. [N.T., 1/10/2019 p. 22].

Appellant was transported back to police headquarters where he was fingerprinted and processed. [N.T., 1/10/2019 p. 22]. While there, Officer Barag asked Appellant if he would consent to a DNA swab from his mouth. [N.T., 1/10/2019 p. 23]. Appellant agreed and provided the sample after which his demeanor changed to complete defeat and sadness, and he stated, "you got me this time Barag, you got me." [N.T., 1/10/2019 p. 23].

## PROCEDURAL HISTORY

A trial by jury originally commenced on October 29, 2018. After hours of deliberations, the jury was deadlocked, and the Court declared a hung jury. Another jury was selected on January 9, 2019 and trial commenced on January 10, 2019. The Commonwealth provided testimony from three witnesses: Officer Barag, Sergeant David McDonald, and Detective Louis Grandizio. Appellant opted not to testify and did not present any fact or character witnesses. The Commonwealth proceeded on the sole charge of Persons Not to Possess.[2]

In addition to the facts set forth above, Officer Barag was shown and explained various photos from the area, including photos of Terrill and Brown Street. On the photos, Officer Barag marked where the group was standing in location to the abandoned property, the area he first saw Appellant emerge from, and the location of the firearm. [N.T., 1/9/2019 p. 24-36]. In the photo marked C3b, Officer Barag showed the jury exactly where the group was standing when he turned onto Brown Street. In the photo marked C5b, Officer Barag showed the jury the side of the abonded house where Appellant appeared and the steps that Appellant was walking towards the sidewalk as he pulled up in his vehicle. In C10b, Officer Barag showed the jury where

---

[2] 18 Pa.C.S. Section 6106

5

the gun was located in relation to where Appellant first emerged, clearly showing the extremely close proximity between the firearm and Appellant.

Officer Barag also explained to the jury that the statement by Appellant, "we be stashin guns out here in case the ops roll through" is street slang for opposition or rival territories that come through an area and "shoot up the block." [N.T., 1/10/2019 p. 37]. Specifically, based upon his extensive training and experience as both a patrol officer and narcotics officer, it is not uncommon in Chester, particularly in the area of Sun Village, to have "community guns" stashed around for someone to easily access in case the opps come through. [N.T., 1/10/2019 p. 39].

Sergeant David McDonald is currently employed with the Delaware County District Attorney's Office, Criminal Investigative Division, assigned to the Forensic Science Unit where his current duties include the examination and identification of fingerprint evidence as well as crime scene investigation. [N.T., 1/10/2019 p. 66]. In total, Sergeant McDonald has been a police officer for the past thirty-five years. [N.T., 1/10/2019 p. 66]. Based upon his extensive training and experience, Sergeant McDonald was offered and accepted as an expert in the field of fingerprint identification, without objection from Appellant. [N.T., 1/10/2019 p. 68].

Sergeant McDonald testified that, on January 26, 2018, he received a fingerprint lift from the Chester City Police Department, which was recovered from the firearm magazine. [N.T., 1/10/2019 p. 70]. Sergeant McDonald's duty was to see if he could identify to whom the fingerprints belonged. [N.T., 1/10/2019 p. 70]. Sergeant McDonald conducted his examination; however, due to the level of distortion and insufficient characteristics of each print, Sergeant McDonald's was not able to determine that the prints were identifiable to anyone, meaning that he was not able to match the prints to Appellant, but he was not able to exclude him either. [N.T., 1/10/2019 p. 71].

6

Detective Louis Grandizio testified that he is currently employed with the Delaware County Office of the District Attorney, Criminal Investigation Division as a firearms examiner and has been so employed for the past eight years. [N.T., 1/10/2019 p. 76]. Prior to his time with Delaware County, Detective Grandizio was employed for sixteen years in the Philadelphia Police Department and eight years as a police officer in Delaware County. [N.T., 1/10/2019 p. 76]. Based upon his extensive training and experience, Detective Grandizio was offered and accepted as a expert in the field of firearms. [N.T., 1/10/2019 p. 79].

In the case at bar, Detective Grandizio was given the recovered firearm for testing. He first determined that the firearm was a .45 caliber automatic, Rock island Armory, with a serial number of RIA1519262. [N.T., 1/10/2019 p. 80]. Detective Grandizio's examination revealed that the firearm was operable and that it appeared in good condition, specifically that there was no indicia that the firearm had been left outside for any extended period of time. [N.T.,1/10/2019 p. 81]. Relative to this appeal, the following exchange occurred on cross-examination:

**Ms. Rushton**: "Detective Grandizio, how much—how many bullets do[es] the magazine hold for that weapon?"

**Detective Grandizio:** "The magazine will hold eight rounds and one in the chamber."

**Ms. Rushton**: "And you have what's marked as C-18 in front of you, correct?"

**Detective Grandizio**: "C-18 is the report. Correct."

**Ms. Rushton**: "and in that report, if you would review it"

**Detective Grandizio**: "Correct."

**Ms. Rushton:** "you indicated that the magazine was 17 plus 1."

**Detective Grandizio**: "Correct. That's a typo. That was made— that was a correction made on last trial, I believe.
Ms. Rushton: "Your Honor—"

7

**ADA Judge:** "Judge, I believe, the Detective may be correct. There was a previous hearing at which I think it was corrected.

**The Court:** "Yeah. I think there was a previous hearing."

**Ms. Rushton:** "Previous hearing."

**The Court:** "He may have misspoken."

**Detective Grandizio:** "Yes."

[N.T., 1/10/2019 p. 83].

A stipulation was entered into between ADA Judge and Ms. Rushton that on or about January 25, 2018, the Pennsylvania State Police Forensic DNA Division received one sealed envelope containing one buccal swab from Appellant and one sealed envelope containing one swab from a Rock Island handgun. If called to testify, Jared Heister, a Forensic DNA Scientist, who would be qualified as an expert in the field of forensic DNA and DNA testing and profiling would testify that no interpretable results were obtained due to the complexity of the mixture and that no comparison could be made for the swab of Appellant to the handgun. [N.T., 1/10/2019 p. 87].

It was also stipulated to that Appellant's prior criminal history contains a conviction from February 2, 2017, in Delaware County, docket number CP-23-CR-5596-2016, for a violation of the Controlled Substance, Drug, Device and Cosmetic Act, 35 Pennsylvania State Consolidated Annotated 780-113(a)(30) Manufacturing, Delivery, Possession with Intent to Deliver a Controlled Substance, an ungraded felony. [N.T., 1/10/2019 p. 89].

Appellant did not present any witnesses and elected not to testify.

During the Commonwealth's closing argument, the prosecutor addressed Officer Barag's testimony with the following statement:

> "and then counsel talked about the comments of the officer about the gun being warm and that it was in the one hearing and it wasn't in the other. Ladies and gentlemen, when you took your oath, you

8

took your oath to only consider the evidence from this stand, and I suggest to you, you weren't at those previous instances. The purpose of why the officer testified, why it came out, why it didn't—that's not for you to consider. What's to consider is that on this stand that Officer Barag gave you the information you need, and ladies and gentlemen, he answered the questions he was asked just as he would do any another hearing. So, the important factors to consider is the evidence that came out today, this morning, from that stand. [N.T. 1/10/2019 p. 116].

There was no objection from Appellant after the closings; however, the Court held a sidebar prior to charging the jury and had the following conversation with the attorneys:

> **The Court**: "I normally don't comment on evidence. You made the statement basically that they can't consider his [Officer Barag] testimony at the hearings. That's what you told them. I'm going to tell them that Officer Barag's testimony at previous hearings was under oath, cross examination of Officer Barag today that addressed specific prior testimony is evidence in this trial and may be considered by you.
>
> **ADA Judge:** Okay.
>
> **The Court:** "Just to make sure it's—"
>
> **ADA Judge:** "I would make the point—I guess I'll make the suggestion that would be considered by—covered by prior inconsistent testimony. That's not necessary but I'll—"
>
> **The Court**: "Yeah, I want to make sure it's clear.

[N.T., 1/10/2019 p. 120].

During the charging of the jury, this Court told the jury that, "Officer Barag's testimony at the previously referred to hearing was under oath. The cross examination of Officer Barag today addressed specific prior testimony and that testimony is evidence in this trial and may be considered." [N.T., 1/10/2019 p. 124].

After the completion of the charge, this Court held a sidebar conversation with the attorneys to ask if there was anything additional. ADA Judge raised a concern that it appeared that Juror #5 had possibly fallen asleep during the charge; counsel for Appellant agreed. In response, the Court

9

sent the jury back to the deliberation room but told the jury not to begin deliberating until they were specifically instructed to by the Court. [N.T., 1/10/2019 p. 147]. Juror #5 was asked to come into the robing room. Juror #5 was questioned about the sleeping and responded with apologies, that he was not sleeping and that he was paying full attention, did not miss anything, and heard all of the Court's instructions. [N.T., 1/9/2019 p. 149]. Juror #5 was then sent to the deliberation room and the jury was allowed to begin their deliberations. [N.T., 1/10/2019 p. 149]. The jury returned a verdict of guilty on the sole charge of Persons Not to Possess.

On February 19, 2019, Appellant was sentenced as follows: Count 4-Persons Not to Possess (F2): 60 months to 120 months in a state correctional institution. Appellant was not RRRI eligible nor was he boot camp eligible. Appellant was ordered to pay court costs and fees and to forfeit the firearm.

Counsel for Appellant filed a Post-Sentence Motion which was ultimately denied by this Court. At the request of Appellant, trial counsel filed a motion to withdraw and sought to have conflict counsel appointed to assist Appellant with his appeal. This Court permitted trial counsel's withdraw and appointed Daniel Pallen, Esquire, who filed a timely appeal and a timely 1925(b) statement raising the following issues: (1) The verdict of the jury was against both the weight and sufficiency of evidence and the defendant is entitled to arrest of judgment or new trial; (2) the trial court abused its discretion in failing to pronounce a mistrial where Juror #5 appeared to be sleeping during the trial court's charging of the jury; (3) reversible error occurred and a mistrial should have been pronounced where the Commonwealth witness (Detective Grandizio) made a statement referring to the previous trial of the defendant which resulted in a hung jury; (4) reversible error occurred insofar as one of the jurors had previous contacts with the defendant and failed to disclose them during *voir dire* (this information was not known until after the verdict was rendered and

10

stated to defense counsel by the Defendant otherwise it would have been addressed during jury selection and prior to trial); and (5) the trial court abused its discretion in failing to pronounce a mistrial where the ADA made impermissible remarks during closing argument requiring the Court to issue cautionary instructions to the jury.

## DISCUSSION

### THE VERDICT OF GUITLY ON THE CHARGE OF PERSONS NOT TO POSSESS A FIREARM WAS SUPPORTED BY AMPLE EVIDENCE.

"Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Chambers,* 188 A.3d 400 (Pa. Super. 2018).

There is sufficient evidence to sustain a conviction when, the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Crosley,* 180 A.3d 761 (Pa. Super. 2018).

"The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Patterson,* 180 A.3d 1217 (Pa. Super. 2018).

*Pursuant to 18 Pa.C.S.A. § 6105: (1):* A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

11

*Pursuant to 18 Pa.C.S.A. § 6105(c)(2):* In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a): A person who has been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, or any equivalent Federal statute or equivalent statute of any other state, that may be punishable by a term of imprisonment exceeding two years.

Appellant argues that the evidence was insufficient to sustain a verdict of guilty on the sole charge of Persons Not to Possess. Although not directly alleged in his 1925(b) statement, Appellant takes issue with the element of possession. Throughout trial, Appellant steadfastly maintained that the Commonwealth did not present sufficient evidence to prove, beyond a reasonable doubt, that Appellant had the power and the intent to control the firearm. Appellant is wrong.

Officer Barag, who has spent eleven years patrolling the streets of Chester, five of which focused on narcotics and drug related violence, is driving down the street when he notices a large group of people. As soon as the individuals see the car they know to be an uncover police vehicle, they immediately look down the street and scream "cops," not just in general location, but directed towards a very specific location. Officer Barag's attention immediately turns to the area where the group is focusing their message, and who does he see emerging from an abandoned house, Appellant. Officer Barag begins to investigate the situation. Appellant tells him he was just over there taking a piss yet Officer Barag can find no signs of urination. But, he does find a firearm stashed in a pile of leaves right where Appellant, by his own admission, tells Officer Barag that he took a piss, a firearm that is still warm to the touch despite it being December. In addition, Appellant's demeanor begins to change from casual to nervous with each step Officer Barag that took that got him closer to the stashed firearm. Once it was located, Appellant immediately said to

12

Officer Barag, "you know we be stashin guns out here in case the opps roll through" and finally, when Appellant is ultimately arrested, read his *Miranda* rights, and is being processed, he admits his own defeat, "you got me, Barag, you got me." The evidence unequivocally supports that Appellant had both the power and intent to control the firearm. Appellant's own words and actions during the encounter show that he stashed the firearm in the pile of leaves as a result of the group yelling cops. Therefore, Appellant's claim is without merit.

**THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.**

"The weight attributed to the evidence is a matter exclusively for the fact finder, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The grant of a new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a re-assessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that, notwithstanding all of the facts, certain facts are so clearly of greater weight, that to ignore them or to give them equal weight with all of the facts is to deny justice. An appellate court may not reverse a verdict unless it is so contrary to the evidence as to shock one's sense of justice. " *Commonwealth v. Johnson,* 192 A.3d 1149, (Pa. Super. 2018).

The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, "the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court "palpably abused its discretion in ruling on the weight claim." Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is "so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Williams, 176 A.3d 298* (Pa. Super. 2017).

13

Appellant's claim that the verdict was against the weight of the evidence is entirely without merit. The jury was free to believe all, part, or none of the evidence and to assess the credibility of the witnesses. The jury determined that the witnesses were credible and that the evidence provided supported a verdict of guilty. The verdict in this case does not even come close to the standard of being so contrary to the evidence as to shock one's sense of justice.

## THIS COURT DID NOT ABUSE ITS DISCRETION BY FAILING TO DECLARE A MISTRIAL.

"The remedy of a mistrial is an extreme remedy required *only when an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal.* "It is within a trial judge's discretion to declare a mistrial upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." *Commonwealth v. Cornelius,* 180 A.3d 1256, 1216 (Pa. Super. 2018)(emphasis added).

Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Commonwealth v. Conte,* 198 A.3d 1169 (Pa. Super. 2018).

### A. APPELLANT'S ALLEGATION THAT DETECTIVE GRANDIZIO'S MINOR REFERENCE TO A PRIOR TRIAL WARRANTED A MISTRAL IS AN ENTIRELY DISPROPORTIONATE RESPONSE TO THE SITUATION AS THE SITUATION WAS PROPERLY CURED AND TRIAL COUNSEL DID NOT EVEN REQUEST SUCH A REMEDY.

Appellant argues that a mistrial should have been declared when Detective Grandizio made the comment that a typo in his expert ballistics report was clarified at the prior trial. Immediately after the comment, counsel for Appellant began to object, and the ADA immediately clarified that Detective Grandizio meant a prior hearing and not a prior trial. This Court and Detective Grandizio

both clarified to the jury that he did in fact mean a prior hearing and not a prior trial. As a whole, the interaction was approximately sixty seconds, was clarified, and moved along from. It was so insignificant that it did not even warrant a cautionary instruction. There had been testimony during the cross of Officer Barag that prior hearings were conducted in regard to this case; therefore, it was entirely fixable to remedy the situation by telling the jury that Detective Grandizio meant a prior hearing and not a prior trial.

This Court acknowledges that reference to a prior mistrial in some cases may warrant such a remedy; however, in this particular case, the reference was not of such a nature that its unavoidable effect would deprive Appellant of a fair and impartial tribunal. Such an extreme remedy would have been entirely inappropriate. In addition, counsel for Appellant did not object any further and did not ask for a mistrial; therefore, the issue is technically waived for purposes of appeal but also lends support to the notion that the "slip up" in word choice was so easily cured that counsel did not even believe a mistrial was an appropriate remedy to request.

## B. THIS COURT DID NOT ABUSE ITS DISCRETION IN FAILING TO PRONOUNCE A MISTRIAL DUE TO ALLEGED IMPERMISSIBLE REMARKS DURING THE COMMONWEALTH'S CLOSING ARGUMENT.

With respect to the closing argument of the lawyer for the Commonwealth, the prosecutor may "argue all reasonable inferences from the evidence in the record and respond fairly to arguments made in the defense closing argument. To assess prosecutors' adherence to these principles, we have required Pennsylvania courts to evaluate both the substance of the challenged remark and its effect upon the jury. The two-part analysis provides a practical framework for evaluating prosecutorial remarks in which a fair balance may be struck between the prosecutor's duties as an officer of the court and his rights as an advocate." *Commonwealth v. Clancy*, 192 A.3d 44 (Pa. Super. 2018).

"There is no *per se* rule which requires the grant of a new trial whenever the district attorney acts improperly. If the court determines that the statement was improper, it must then evaluate the effect of the remark pursuant to the unavoidable prejudice test." *Id.*

Appellant argues that this Court should have declared a mistrial after the prosecutor made a remark in his closing that was allegedly impermissible and that such failure of the Court to do so constitutes reversible error. First, Appellant presupposes that the comment in question was impermissible. The comment made by the prosecutor during closing that the jury should consider the testimony presented by Officer Barag at trial and not Officer Barag's prior testimony was easily cured during the Court's own charge. This Court told the jury that closing arguments are not evidence and that the only law to consider when deliberating is the law given by the Court. This Court specifically told the jury that Officer Barag's prior testimony at a previous hearing was under oath and could be considered by the jury in their determination of his credibility. The prosecutor's remarks had nothing to do with the guilt or innocence of Appellant, had nothing to do with his own personal thoughts, and did not create any unavoidable prejudice. In addition, counsel for Appellant did not object and did not request a mistrial.

**APPELLANT'S ALLEGATION THAT ONE OF THE JURY PANEL MEMBER'S HAD PREVIOUS INTERACTIONS WITH APPELLANT AND APPELLANT WAS NOT MADE AWARE OF THE SITUATION UNDER AFTER HE WAS FOUND GUITLY IS SIMPLY INCREDIBLE AND DOES NOT CONSTITUTE REVERSIBLE ERROR.**

During selection this Court asked the jury pool to stand if anyone knew Appellant or anyone in Appellant's family; no one stood in response to the question. Appellant was present during the entire group *voir dire,* able to physically see the faces of the individuals in the jury pool and had access to the jury selection sheets containing each panel member's name and address. Appellant did not raise any issues with knowing anyone in the audience. When selection was finished and the was jury seated, this Court asked both parties if the seated jury was the jury they

selected, and they both responded in the affirmative, again no mention of Appellant knowing any of the panel members. Appellant was present all day during trial. At no point in time, did Appellant raise any issue with the panel members. It was not until after the verdict was rendered, did Appellant miraculously now discover that he had prior interaction(s) with one of the panel members. Appellant's argument that he was not made aware of this prior contact until after the verdict was rendered is entirely incredible. If Appellant did not recognize the individual after an entire two days of selection and trial, then the prior contact between was so insignificant that Appellant could not even recall. Appellant also fails to argue how this interaction caused him any prejudice.

## CONCLUSION

For the aforementioned reasons, this Court respectfully asks that Appellant's judgment of sentence be affirmed on appeal.

BY THE COURT:

JOHN P. CAPUZZI, SR.,       J.

17